[Cite as *Berea v. Blackshear*, 2025-Ohio-4757.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF BEREA,                          :

    Plaintiff-Appellee,          :

                                   No. 114819

    v.                                    :

REGINALD N. BLACKSHEAR,                  :

    Defendant-Appellant.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 16, 2025

---

Criminal Appeal from the Berea Municipal Court
Case No. 24CRB01037-1

---

### *Appearances:*

Barbara L. Jones, City of Berea Law Director and Megan M. Matthews, City of Berea Assistant Law Director, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Jennifer J. Pritchard, Assistant Public Defender, *for appellant.*

EILEEN A. GALLAGHER, A.J.:

{¶ 1} Reginald N. Blackshear ("Blackshear") appeals his conviction for domestic violence. For the following reasons, we affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 2} On August 26, 2024, a complaint was filed in the Berea Municipal Court alleging that Blackshear, who was living with I.G. at the time, kicked I.G. in the face in violation of R.C. 2919.25(A). The court held a hearing that same day during which Blackshear entered a not guilty plea and the court issued a domestic-violence temporary protection order against Blackshear pursuant to R.C. 2919.26. On November 21, 2024, the court conducted a bench trial and, on November 26, 2024, the court issued a journal entry finding Blackshear guilty of domestic violence.

{¶ 3} On December 5, 2024, a magistrate sentenced Blackshear to pay a $1,000 fine which was suspended; a 180-day jail sentence, with 179 days suspended and credit for one day served; "Basic 2 Yr Probation," which we take to mean two years of community-control sanctions pursuant to R.C. 2929.25 and no contact with I.G. On December 9, 2024, the court issued a journal entry adopting the magistrate's decision and imposing the aforementioned sentence.

## II. Trial Testimony and Evidence

{¶ 4} The following evidence was presented at trial.

{¶ 5} I.G. testified that she was living with Blackshear in Berea on August 26, 2024. According to I.G., she and Blackshear "had an on and off relationship . . . since 2011." I.G. testified that, in the late-night hours of August 25, 2024 and the early morning hours of August 26, 2024, she and Blackshear had a disagreement about an air mattress. I.G. poked a hole in the air mattress with a knife she had retrieved from the kitchen and then she lay down on blankets on the

floor. According to I.G., when she was lying on the ground, Blackshear kicked her in the nose "with his yellow and black LeBron James shoes."

{¶ 6} Asked how Blackshear caused her physical harm, I.G. testified as follows: "I mean, he kicked me across my face this way. I was sort of insulated by the blankets and everything. He made an attempt to kick at my body more after he kicked me in the face, but I was on my way down the steps as quickly as I possibly could."

{¶ 7} Under cross-examination about her physical injuries, I.G. testified that her face was "sore." When asked to identify the injury to her face from a still photograph, as well as the video taken from a police officer's body camera immediately after the incident, I.G. testified as follows: "I'm not sure if I would be able to see an injury or not, sir, because I was terrified for my life, so I ran down the steps as quickly as I could to initiate a call to the police." Blackshear's attorney cautioned I.G. that she was not answering the questions he was asking and he asked her again if there was "an actual physical injury" to her face. I.G. answered, "Yes. There was a physical injury to my face. I was kicked in my face right here." Ultimately, I.G. testified that her nose looked "a little swollen" in the photograph.

{¶ 8} Berea Police Department Patrolman Xavier Payton ("Ptl. Payton") testified that he responded to a call concerning a domestic dispute "around 12:30, 12:40 in the morning" on August 26, 2024. When he arrived at the apartment building, I.G. was sitting outside. I.G. told Ptl. Payton that she and her boyfriend, Blackshear, lived at the address. According to Ptl. Payton, I.G. told him the following

about what occurred: "She said that she and [Blackshear] had gotten into an argument. She had been laying on an air mattress. At some point, she was dragged off of the air mattress. And she did state to me that at some point, she popped it. After popping the air mattress, he pulled her and kicked her in the face."

{¶ 9} Asked if he "examined [I.G.] physically for injuries," Ptl. Payton answered, "Yes . . . . I saw some redness around her nose." Ptl. Payton further testified that it was "not atypical" that I.G. did not "have marks or bruises where she was injured."

{¶ 10} According to Ptl. Payton, he spoke with Blackshear at the scene, and Blackshear stated that he and I.G. "were having an argument over other women that he was seeing — or another woman he was seeing, and that made [I.G.] upset. And I believe he stated that she's called the police on him in the past to get him in trouble to prevent him from leaving her." Ptl. Payton also testified that, during Blackshear's transport to the police station, Blackshear alleged that I.G. "came after him with a knife."

{¶ 11} The prosecutor asked Ptl. Payton the following question: "Based upon your training and knowledge, along with the evidence that was before you on August 26th, 2024, do you believe that Mr. Blackshear knowingly caused or attempted to cause physical harm to his live-in girlfriend, [I.G.], by kicking her in the face?" Ptl. Payton replied, "Yes."

{¶ 12} On cross-examination, Blackshear's attorney played the video from Ptl. Payton's body camera as he arrived at the scene. Ptl. Payton agreed that there

is a "pretty clear image" of I.G. on the video as she is speaking to him. Ptl. Payton also agreed that there is no "redness" visible on or around I.G.'s nose in the body-camera video.

## III. Law and Argument

{¶ 13} Blackshear raises two assignments of error on appeal.

I. The trial court erred by entering a judgment of conviction that was against the manifest weight of the evidence, in derogation of Reginald Blackshear's right to due process of law, as protected by the Fourteenth Amendment to the United States Constitution as well as Article I, Section 16 of the Ohio Constitution.

II. Reginald Blackshear was denied his right to effective assistance of counsel as provided by the Sixth and Fourteenth Amendments to the United States Constitution as well as Section 10, Article I of the Ohio Constitution.

### A. Manifest Weight of the Evidence

{¶ 14} A manifest-weight-of-the-evidence challenge attacks the credibility of the evidence presented and questions whether the State met its burden of persuasion. *State v. Whitsett*, 2014-Ohio-4933, ¶ 26 (8th Dist.). Weight of the evidence "addresses the evidence's effect of inducing belief," i.e., "whose evidence is more persuasive — the state's or the defendant's?" *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387 (1997). When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the appellate court functions as a "thirteenth juror" and may disagree "with the factfinder's resolution of . . . conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Furthermore, in *State v. Jordan*, 2023-Ohio-3800, ¶ 17, the Ohio Supreme Court held that "[s]itting as the 'thirteenth

juror,' the court of appeals considers whether the evidence should be believed and may overturn a verdict if it disagrees with the trier of fact's conclusion."

{¶ 15} In a manifest-weight challenge, the appellate court examines the entire record, weighs the evidence and all reasonable inferences that may be drawn therefrom, considers the witnesses' credibility and determines whether, in resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). Reversal on manifest-weight grounds is reserved only for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

{¶ 16} R.C. 2919.25(A) states that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(F)(1) and (2) define "household member" to include someone who is "cohabitating with the offender." Additionally, R.C. 2901.01(A)(3) defines "physical harm" as "any injury . . . regardless of its gravity or duration." This court has held that, because the word "attempt" is in the domestic violence statute, "an offender does not have to cause a tangible injury to his victim in order to be convicted of domestic violence in violation of R.C. 2919.25(A)." *State v. Stover*, 2017-Ohio-291, ¶ 15 (8th Dist.).

{¶ 17} In Blackshear's first assignment of error, he argues that his conviction for domestic violence is against the manifest weight of the evidence because I.G.'s "testimony is questionable and was contradicted by the photographic evidence

presented." Specifically, Blackshear argues that the "implications of being kicked in the face with a shoed foot while lying on the ground and the only visible evidence captured being possibly minor swelling or redness seems incredible."

{¶ 18} Upon our review of the trial transcript we find that I.G. testified that Blackshear kicked her in the face with his shoes on and attempted to kick her in the body before she ran down the stairs and called the police. Blackshear's argument concerning the lack of "visible evidence" of any injury is not well-taken. To be convicted of domestic violence under R.C. 2919.25(A), visible evidence of an injury is not required. In other words, attempting to cause physical injury is sufficient to violate the domestic-violence statute. *See, e.g., Parma v. Singh*, 2018-Ohio-5235, ¶ 18 (8th Dist.) ("[T]o be convicted of domestic violence, actual physical harm is not required; the statute criminalizes . . . knowingly attempting to cause someone physical harm.").

{¶ 19} We do not find this to be the exceptional case that weighs heavily against the conviction. Accordingly, Blackshear's first assignment of error is overruled.

## B. Effective Assistance of Counsel

{¶ 20} In his second assignment of error, Blackshear argues that he was denied his right to effective assistance of counsel because of trial counsel's failure to object to inadmissible testimony. Specifically, Blackshear argues that "the prejudicial effect of permitting the introduction of improper character evidence including years of abuse, the legal conclusion that [Blackshear ] committed the

offense of domestic violence, and the arresting officer's determination that [Blackshear] was not truthful in the statement he provided law enforcement demonstrates that there is a reasonable probability that the deficient performance deprived [Blackshear] of a fair trial rendering the result unreliable."

{¶ 21} To succeed on a claim of ineffective assistance of counsel, a defendant must establish that his or her attorney's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668 (1984). However, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance." *Id.* at 697. *See also State v. Bradley*, 42 Ohio St.3d 136 (1989).

{¶ 22} It is well established that "in a bench trial, the court is presumed to have considered only the relevant, material, and competent evidence." *State v. Willis,* 2008-Ohio-6156, ¶ 15 (8th Dist.). *See also State v. White*, 15 Ohio St.2d 146, 151 (1968) ("We indulge in the usual presumption that in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.").

{¶ 23} Furthermore, "failure to object to error, alone, is not sufficient to sustain a claim of ineffective assistance of counsel." *State v. Watson*, 2020-Ohio-3462, ¶ 43 (8th Dist.). The Ohio Supreme Court "has recognized that . . . failing to

object to certain evidence [] is not deficient performance, especially in a bench trial."
*Id.*, citing *State v. Keene*, 81 Ohio St.3d 646, 668 (1998).

{¶ 24} In this case, we need not analyze the allegedly improperly admitted evidence. This court has held that "because the matter was tried to the court and not a jury, we may presume that this improper evidence did not infect the judge's decision-making." *Willis* at ¶ 16. *See also Watson* at ¶ 46 ("Any prejudicial effects of [the] testimony were . . . eliminated by the trial court hearing the facts rather than a jury.").

{¶ 25} Our review of Blackshear's arguments on appeal shows that he failed to argue how his counsel's allegedly deficient performance prejudiced him. Blackshear did nothing more than summarily conclude that his counsel's deficient performance was prejudicial: "[T]he failure of trial counsel to object to each of these lines of questioning was deficient and such deficient performance prejudiced him so as to deprive him of a fair trial." Blackshear's conclusory statement fails to take into account the long-established presumption that a judge in a bench trial considers only properly admitted evidence. Blackshear fails to argue, let alone demonstrate, anything to the contrary.

{¶ 26} Accordingly, Blackshear's second assignment of error is overruled.

{¶ 27} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Berea Municipal Court to carry this judgment into execution.  The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

EMANUELLA D. GROVES, J., and
SEAN C. GALLAGHER, J., CONCUR